UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD BREWER,

     Plaintiff,

v.                                                    CASE No. 8:09-CV-132-T-27TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision be affirmed.

I.

The plaintiff, who was forty-six years old at the time of the administrative hearing and who has a seventh grade education, has worked

---

[1]This matter comes before me pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

at such jobs as roofer, construction worker, parts assembler, car washer, and laborer (Tr. 175, 178, 328, 337).[2] He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to rheumatoid arthritis (Tr. 86). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had a severe impairment of rheumatoid arthritis (Tr. 20). The law judge concluded that the impairment limited the plaintiff to light work with a sit/ stand option performing tasks involving frequent, but not constant, fine manual dexterity (Tr. 20-21). He concluded further that the plaintiff can engage in occasional climbing, balancing, kneeling, crouching, crawling, and lifting above shoulder level and must avoid all climbing around unprotected heights (Tr. 21). The law judge found that these limitations prevented the plaintiff from performing past work (Tr. 27-28). However, based upon the testimony of a vocational expert, the law judge determined that the plaintiff

[2]The plaintiff also claims that he finished the eighth grade, quit the seventh grade, and that he has a sixth grade education (Tr. 90, 100, 199, 215, 219, 256).

could perform other work that exists in significant numbers in the national economy, such as produce grader, merchandise marker, gate guard, and parking lot attendant (Tr. 28-29). The law judge therefore decided that the plaintiff was not disabled (Tr. 29). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff challenged the law judge's decision on four grounds. None warrants reversal.

A. The plaintiff contends, first, that the law judge erred in finding that the plaintiff's mental disorder was a nonsevere impairment (Doc. 20, pp. 7-10). The plaintiff points out that the court of appeals has stated that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Notably, the law judge acknowledged this principle in his decision (Tr. 18).

The law judge specifically considered the plaintiff's allegation of a severe mental impairment (Tr. 20, 23, 25). Moreover, the law judge

explained his determination of the minimal degree of mental impairment as

follows (Tr. 20):

> The State agency psychologists determined that the claimant did not have a severe mental impairment. The evidence shows that claimant made numerous complaints of mental symptoms to Dr. [Richard Lee] Belsham who gave claimant a GAF score of 45. The claimant also told this physician that he could not read or write, but then testified that he could. The undersigned is cognizant that claimant did not make these complaints to any other physician of record, including physicians who treated him for two years. In addition, Dr. [Richard A.] Proctor found claimant's memory, concentration, and social interaction were unimpaired. The claimant's alleged mental symptoms are discussed in detail later in this decision and it appears that the GAF score of 45 is possibly a typographical error as the evidence does not support this finding, including the mental status examination. Accordingly, significant weight has been given to the opinion of the State agency psychologists and the claimant has the following mental limitations set forth in "Part B" of the mental listings: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration. The evidence documents that claimant has had no mental health treatment from any psychiatrist or other mental health professional and has not been hospitalized or referred by any treating/examining

physician for treatment of any alleged mental problem.

In an effort to establish that the law judge erred in not finding a severe mental impairment, the plaintiff relies principally upon statements made by Dr. Belsham, the consulting psychologist, and his assessment of a Global Assessment of Functioning ("GAF") score of 45 (Doc. 20, pp. 7-10). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (id.).

After a one-time evaluation on August 30, 2005, Dr. Belsham diagnosed the plaintiff with a mood disorder, not otherwise specified (NOS) (Tr. 256). On Axis V, Dr. Belsham indicated "GAF 45" (id.). In summary, Dr. Belsham stated: "Although mental health issues exist they do not appear to preclude [the plaintiff] from working, but play more of a secondary role. Additional barriers to employment would appear to be few identifiable job

skills beyond labor-oriented, no driver's license, reports that he cannot read or write, and significant criminal record" (Tr. 257). Importantly, Dr. Belsham did not specify any mental functional limitations.

The plaintiff contends that this consultant's report and, particularly, the assignment of a GAF score of 45 "supports a finding that Mr. Brewer's mental impairment is more than a slight abnormality" and, therefore, severe (Doc. 20, p. 7). This misinterprets the meaning of the GAF score in this case.

In Social Security cases, a GAF score normally is used to signify the degree of a mental impairment. However, in some circumstances, a GAF score can indicate something entirely different. Thus, "the GAF scale has two components: the first part covers symptom severity, and the second part covers functioning." DMV-IV-TR, p. 32. "[W]here the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." Id., p. 33. "For example, ... the GAF rating for an individual with minimal psychological symptomatology but significant impairment in functioning ... would be 40 or lower." Id.

In light of these principles, Dr. Belsham's GAF rating of 45 reflects the plaintiff's level of functioning and not the severity of psychological symptoms. As indicated, Dr. Belsham stated that the plaintiff's mental health issues "do not appear to preclude him from working, but play more of a secondary role" (Tr. 257). On the other hand, Dr. Belsham listed such barriers to employment as "few identifiable job skills beyond labor-oriented, no driver's license, reports that he cannot read or write, and significant criminal record" (id.). These circumstances bear directly on occupational functioning.

The conclusion that the GAF of 45 does not indicate symptom severity is supported further by the law judge's conclusion that a GAF of 45 for the plaintiff's mental impairment was so out of line with the evidence that the rating could have been a typographical error (Tr. 20, 25). In this respect, the law judge stated (Tr. 25):

> (1) The record shows that Dr. [Robert W.] Brochu treated claimant over two years and no mental symptoms were noted or complaints made to his physician for mental problems;
> (2) Dr. [Guillermo] Suarez in an extensive evaluation of March 30, 2005, observed the claimant to be alert, oriented, and cooperative

before he referred him to Vocational
Rehabilitation;

(3) Dr. Proctor on August 25, 2005, reported that
claimant had no difficulty with concentration or
recall and could perform activities associated with
memory, concentration, and social interaction
which were all unimpaired;

(4) Dr. Belsham said that claimant had normal
insight, organized and relevant thoughts, and,
although he had some mental issues, he had no
mental health issues that would preclude claimant
from working;

(5) Dr. Belsham reported that claimant had never
had any mental health treatment or hospitalizations
for any mental condition; and

(6) Physicians at Southeast Family Health Clinic
noted intact judgment and insight.

Consequently, while the law judge was mistaken in thinking that Dr.

Belsham's GAF rating of 45 may have been a typographical error, he was not

mistaken in thinking that the plaintiff's psychological symptoms were not at

a level of 45.

Moreover, no treating or examining physician or psychologist

has opined that the plaintiff has any mental functional limitations. In

addition, a non-examining reviewing psychologist, who had the benefit of Dr.

Belsham's report (Tr. 245), concluded that the plaintiff's mental impairment

of mood disorder NOS was not a severe impairment (Tr. 233).

The law judge therefore did not err in finding that the plaintiff's mental impairment was nonsevere.

B. The plaintiff's second challenge is to the law judge's determination of his credibility (Doc. 20, pp. 10-15). He contends that the law judge's conclusion is not supported by the objective evidence and that the record supports a more restrictive impairment (id.).

The plaintiff testified at the hearing that his arthritis is "eating [him] alive" and that he "can't do nothing no more" (Tr. 330). The plaintiff stated further that he can only lift about five to seven pounds (Tr. 331). He testified that he cannot grip, make a fist, or grab small things (Tr. 334-35). Additionally, the plaintiff testified that he could only sit or stand for thirty minutes, and could not walk a block without stopping (Tr. 335).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that

condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge expressly recognized this standard, as well as the pertinent regulations and Social Security rulings (Tr. 21). Applying the standard, the law judge found "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" (Tr. 22). Notably, the law judge did not totally reject the plaintiff's subjective complaints, but rather concluded that the plaintiff was restricted to a range of light work (Tr. 20-21). He only discounted the plaintiff's assertion that he was totally disabled.

After discussing the medical evidence at length, the law judge

explained his credibility determination as follows (Tr. 24):

> However, the claimant's statements as to the
> frequency, intensity and duration of his symptoms
> are inconsistent with the evidence of record and
> cannot be fully credible. The objective medical
> evidence does not confirm by diagnostic testing the
> severity of his alleged pain and subjective
> symptoms, nor does the weight of the medical and
> non-medical evidence demonstrate the presence of
> an impairment that reasonably could be expected to
> produce pain and functional limitations to the
> degree alleged by the claimant, preventing him for
> [sic] performing any work activity. The medical
> evidence does document a diagnosis of rheumatoid
> arthritis and complaints of joint pain and swelling.
> However, examinations have been shown [sic] the
> claimant to be only mildly symptomatic when
> taking prescribed medications. Since the alleged
> onset date the claimant has not been referred to a
> specialist for further workup or management of his
> rheumatoid arthritis (other than Dr. Crager on June
> 8, 2004 and vocational rehabilitation with no
> reports submitted to show that claimant kept these
> referrals). The undersigned is also cognizant that
> claimant had only one emergency room visit, and
> his visits to doctors have decreased each year
> which is not consistent with the complaints of total
> disability.

The law judge added (Tr. 26):

> [T]he ... residual functional capacity assessment is
> supported by the evidence of record as a whole and

the fact that no treating or examining physician placed limitations on the claimant's ability to function. Moreover, the findings contained in the record are not supportive of the claimant's persistent allegations of incapacitating pain and disabling impairments. The claimant's statements concerning his impairments and its impact on his ability to work are not entirely credible. The limitations to which the claimant testified are far in excess of those which reasonably would be expected from the objective clinical findings and are not consistent with all the other medical evidence of record. While the evidence does show that the claimant has had medically determinable impairments which could reasonably be expected to produce physical symptoms, it does not show that the claimant's symptoms are of such intensity, duration or frequency to render him disabled. The undersigned finds that the record does not demonstrate by objective medical evidence any impairment capable of causing the degree and type of pain that the claimant alleges. Therefore, his subjective complaints are not fully credible to the extent that he alleges an inability to perform work activity at all levels of physical exertion.

Moreover, the principle that, under the substantial evidence test, findings of fact may be reversed only when the record compels a reversal applies to credibility determinations. See Adefemi v. Ashcroft, supra. The evidence clearly does not compel a finding that the plaintiff was completely

credible. Therefore, the plaintiff's argument that the law judge improperly rejected his subjective complaints of pain is unmeritorious.

C. The plaintiff asserts that the hypothetical question asked of the vocational expert was deficient in several respects (Doc. 20, pp. 15-19). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

In light of these principles, the plaintiff's challenge is misdirected. The law judge's hypothetical question matched the finding of the plaintiff's residual functional capacity. Accordingly, what the plaintiff is really challenging is the finding of the residual functional capacity.

The plaintiff complains first about handling and fingering limitations (Doc. 20, pp. 16-17). The law judge found that the plaintiff is capable of performing tasks involving fine manual dexterity frequently, but not constantly, and included that limitation in his hypothetical to the

vocational expert (Tr. 26, 349). The law judge asked the vocational expert to assume that the individual could perform tasks involving frequent fine manual dexterity (Tr. 349). The expert identified three types of jobs that a person could perform with that limitation (Tr. 351). A subsequent question asked by plaintiff's counsel assumed a limitation for fingering occasionally (Tr. 353), and the expert said that such a limitation would reduce the jobs he had identified to one, gate guard (id.).

For his proposition that the evidence supports a greater manipulative restriction, the plaintiff points first to the opinion of a reviewing non-examiner who opined that the plaintiff was limited in his ability to finger and reach (Doc. 20, p. 16). However, that assessment (Tr. 264) was made by an individual referred to as a single decisionmaker, not by a medical professional (Tr. 268). More significantly, a later reviewing non-examining physician opined that the plaintiff had no manipulative limitations (Tr. 250). No other doctor has stated any manipulative limitations for the plaintiff. Accordingly, the finding by the law judge that the plaintiff can perform fine manipulation frequently is supported by substantial evidence. The evidence certainly does not compel a different conclusion.

In all events, even if the evidence could support a greater manipulative limitation, it certainly does not compel a limitation greater than occasional fine dexterous use of the hands. As the plaintiff acknowledges, the vocational expert testified that the plaintiff could perform the work of gate guard even if he were limited to occasional fine dexterous use of the hands (Doc. 20, p. 17; see Tr. 353). The availability of this job in the national economy renders harmless any error regarding the law judge's treatment of the plaintiff's use of his hands. Allen v. Bowen, 816 F.2d 600 (11th Cir. 1987)(174 local positions sufficient); Caldwell v. Barnhart, 261 Fed. Appx. 188 (11th Cir. 2008)(harmless error after two of three types of jobs were eliminated); Brooks v. Barnhart, 133 Fed. Appx. 669 (11th Cir. 2005). Importantly, it was the plaintiff's burden to show that he could not perform the job of gate guard after that job was identified by the vocational expert as one that the plaintiff could perform. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The plaintiff cannot carry that burden as to gate guard based upon a limitation of fine manipulation because there is no evidence that the plaintiff had a limitation greater than occasional.

The plaintiff argues, however, he could not perform the job of gate guard because it has an SVP of 3 and is semi-skilled (Doc. 20, p. 17). However, the expert testified that an individual with the plaintiff's profile could perform the job of gate guard. The plaintiff's unsupported assertion that he could not does not overcome the expert's testimony. Jones v. Apfel, supra, 190 F.3d at 1229-30.

In short, the plaintiff has failed to show that he could not perform any of the jobs identified by the expert due to a manipulative limitation. And he certainly has not established that he could not perform the job of gate guard.

The plaintiff also contends that the law judge failed to include in the hypothetical question limitations regarding mental functioning (Doc. 20, pp. 17-18). However, as previously explained, the law judge reasonably found that the plaintiff had only a nonsevere mental impairment. This means that the mental impairment was only a slight abnormality which had a minimal effect on the plaintiff's ability to work. Moreover, the plaintiff has not even identified a mental functional limitation which should have been included in the hypothetical question, much less pointed to evidence which

compels a finding of such a limitation. The hypothetical question, therefore, was not flawed because it did not include mental functional limitations.

The plaintiff also complains that the law judge erred because he did not include subjective symptoms in the hypothetical question (Doc. 20, pp. 18-19). However, as previously discussed, the law judge reasonably discounted the plaintiff's subjective complaints "to the extent they are inconsistent with the residual functional capacity assessment" (Tr. 22). Since the residual functional capacity assessment coincided with the hypothetical question, all of the credible subjective complaints were covered by the question, while the remainder were properly omitted. <u>Crawford</u> v. <u>Commissioner of Social Security, supra</u>, 363 F.3d at 1161.

The plaintiff has therefore failed to show that the hypothetical question was deficient.

D. The plaintiff contends, last, that the law judge erred because he "totally ignored" the statements of the plaintiff's daughter, stepfather, and sister (Doc. 20, pp. 19-21). This contention is meritless because the individuals did not testify, but merely filled out function reports (Tr. 127-31, 145-52, 204-11). Significantly, these statements were not under oath.

Further, the relatives were not presented to the law judge so that he could ask them questions and observe their demeanor. There is a fundamental difference between testimony and unsworn statements.

The cases cited by the plaintiff on this issue are therefore inapposite since they concerned testimony (see Doc. 20, p. 20). The plaintiff has not cited any authority holding that the law judge is required to evaluate all unsworn statements that had been submitted to the Social Security Administration. The governing principle, rather, is that the law judge is not required in his decision to refer specifically to every piece of evidence. Dyer v. Barnhart, supra, 395 F.3d at 1211. Consequently, the law judge's decision is not deficient because it did not discuss the relatives' unsworn statements. The law judge did expressly state that he had considered "the evidence of record" (Tr. 22).

Further, the Commissioner points out that the statements are cumulative of the plaintiff's testimony (Doc. 22, p. 23). Accordingly, even if the statements were treated under the same principles as testimony, the law judge's failure to discuss them would not warrant reversal. This is because the statements were implicitly covered by the credibility determination

regarding the plaintiff's testimony.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981); Osborn v. Barnhart, 194 Fed. Appx. 654, 666 (11th Cir. 2006)(unpub. dec.).

### IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and does not contain any reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JANUARY _/ /_ , 2010

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).